**UNITED STATES of America**

v.

**GEORGIA POWER COMPANY, a corporation, Local Union No. 822, Athens, Local Union No. 84, Atlanta, Local Union No. 923, Augusta, Local Union No. 780, Columbus, Local Union No. 896, Macon, Local Union No. 847, Rome, Local Union No. 511, Valdosta, of the International Brotherhood Electrical Workers, all unincorporated associations.**

Civ. A. No. 12355.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 14, 1979.

J. Stanley Pottinger, Larry G. Ward, Dept. of Justice, Washington, D. C., for plaintiff.

Michael C. Murphy, Charles W. Whitney, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for Georgia Power Co.

Patrick M. Scanlon, Adair, Goldthwaite & Daniel, P. A., Atlanta, Ga., for Local No. 84.

ORDER

HAROLD L. MURPHY, District Judge.

This civil rights action was initiated on January 10, 1969, by the United States Attorney General pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The action was consolidated with two actions by private litigants (Civil Action Nos. 11723 and 12185) for trial purposes. The district court's original decision was appealed to the Fifth Circuit Court of Appeals which vacated portions of the decision and remanded the action for further proceedings. *United States v. Georgia Power Company*, 474 F.2d 906 (5th Cir. 1973). As a result of the Fifth Circuit's ruling, the district court issued an Amended and Final Decree on January 31, 1974 [Hereinafter the "Decree"], enjoining various acts of discrimination, providing relief for several classes of discriminatees, and retaining jurisdiction for the purpose of any additional proceedings or subsequent grievances. Under this Court's continuing jurisdiction, there are several matters presently pending to which we now turn.

1. Paragraph III of the Decree was directed toward alleviating the effects of past discrimination in the promotion policies of the Georgia Power Company [Hereinafter the "Company"]. In an attempt to foster minority participation in all phases of the Company's work, Paragraph III provided for a modification of the seniority provisions of the collective bargaining agreement entered into between the Company and defendant Local 84 of the International Brotherhood of Electrical Workers (AFL–CIO) [Hereinafter "Local 84"]. Paragraph III of the decree, as amended by the addition of Section G [1], provides that in competition regarding those conditions of employment for which seniority is a factor, company seniority will apply wherever an affected class member is involved. Paragraph III precludes application of the seniority system of the collective bargaining agreement, which called for bargaining unit seniority to apply in competitive bidding.

Local 84 has moved to modify the Decree to allow the collectively bargained for seniority system to apply in the same way to all members of any bargaining unit at the Company. Local 84 contends, and the Court has little doubt, that the injunction regarding seniority at the Company was based on the theory that seniority systems which perpetuate the effects of past discrimination violate Title VII regardless of their facial neutrality. *United States v. Georgia Power Company*, 3 FEP Case 767, 784 (N.D.Ga.1971), 474 F.2d 906, 927 (5th Cir. 1973). At the time of the Decree such a theory was clearly prevailing in the Fifth Circuit. See, *Local 189, United Papermakers and Paperworkers v. United States*, 416 F.2d 980 (5th Cir. 1969); *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). However, in 1977, the United States Supreme Court ruled that this theory was not a proper interpretation of Title VII. *International Brotherhood of Teamsters*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) [Hereinafter *"Teamsters"*]; *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) [Hereinafter *"Evans"*]; *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) [Hereinafter *"Hardison"*]. Relying on section 703(h) of Title VII, 42 U.S. § 2000e–2(h), the Supreme Court held that, "an otherwise neutral, legitimate seniority system does not become unlawful under Title VII simply because it may perpetuate pre-Act discrimination." *Teamsters* 431 U.S. at 354, 97 S.Ct. at 1864. The Court made a similar ruling with respect to perpetuation of post-Act discrimination. *Id.* at n. 30. While this Court has carefully considered the narrow interpretation of the Supreme Court's trilogy propounded by the non-movants, we are forced to agree with the Fifth Circuit's conclusion in *Myers v. Gilman Paper Corp.*, 556 F.2d 758, 760 (5th Cir. 1977):

> The principal import of those decisions for this case is the holding that "bona fide" seniority systems, that is, systems which are facially neutral, which did not

1. See this Court's order of November 4, 1977.

have their genesis in racial discrimination, and which were negotiated and have been maintained free from any illegal purpose, do not violate Title VII even though they perpetuate the effects of an employer's discrimination.

See also, *Southbridge Plastics Division, etc. v. Local 759, etc.,* 565 F.2d 913 (5th Cir. 1978).

■ The non-movants contend that the Supreme Court's rulings do not require retroactive application. However, the motion for modification by Local 84 does not seek retroactive application. Rather it seeks a present modification of the Decree. That is the defendant is not seeking recision of any employment decisions based on the Decree's seniority system, but a modification allowing the collective bargaining agreement's seniority system to reactivate. Thus, no question of retroactivity is presented to the Court. But see, *EEOC v. Bethlehem Steel Corp.,* 16 EPD ¶ 8245 (W.D.N.Y.1978).

■ The non-movants next contend that the Court, pursuant to its equitable power, should refrain from modifying the Decree because it would require amendment of the affirmative action goals negotiated in consideration of the seniority system imposed upon the parties. Whether or not the affirmative action goals were determined in the context of a modified seniority system cannot dissuade this Court from following the clear directions of the United States Supreme Court. It should also be noted that the affirmative action goals alluded to have recently been amended by the Court, at the request of the parties.[2] Obviously inability to reach those amended goals should not bar the requested modification.

■■ Finally, the non-movants contend that section 703(h) does not grant immunity to all seniority systems, but only those which are "bona fide". A "bona fide" seniority system is one which is negotiated and maintained without a discriminatory purpose. *Southbridge Plastics Division, etc. v. Local 759, etc.,* 565 F.2d at 915 (5th Cir. 1978). In arguing that the seniority system

in dispute is not immunized by section 703(h), the Government points to the discriminatory hiring practices of the Company and the perpetuation of this discrimination through the seniority system. This is not enough to show that the seniority system had "a genesis in racial discrimination." *Myers,* supra at 760. The Supreme Court in *Teamsters* rejected the argument that a seniority system which perpetuated past discrimination could not be "bona fide." To so hold the Court said, "would be a perversion of the congressional purpose." *Teamsters,* 431 U.S. at 353, 97 S.Ct. at 1863. There is no evidence before the Court indicating that the seniority provided for in the collective bargaining agreement between the Company and Local 84 is not "bona fide" as that term is used in section 703(h). Indeed, the Court notes that the system agreed to by the Company and Local 84 is not untypical of those negotiated through collective bargaining.

While the trilogy of cases beginning with *Teamsters* significantly changed the law in this Circuit, it did not reverse the Supreme Court's holding in *Franks v. Bowman,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) [Hereinafter *"Franks"*]. Rather than reversing *Franks,* the Court distinguished the circumstances of the three cases. Indeed, the Court reiterated *Franks'* holding, "that § 703(h) does not bar the award of retroactive seniority to job applicants who seek relief from an employer's post-Act hiring discrimination." *Teamsters,* 431 U.S. at 346, 97 S.Ct. at 1860.

■ The language of the *Franks* holding defining the purpose and scope of section 703(h) has been reaffirmed by the Supreme Court in *Teamsters, Hardison,* and *Evans.* The Court in *Franks* stated:

[I]t is apparent that the thrust of the section is directed toward defining what is and what is not an illegal discriminatory practice in instances in which the post-Act operation of a seniority system is challenged as perpetuating the effects of discrimination occurring prior to the ef-

---

**2.** See this Court's order of July 7, 1978.

fective date of the Act. There is no indication in the legislative materials that § 703(h) was intended to modify or restrict relief otherwise appropriate once an illegal discriminatory practice occurring after the effective date of the Act is proved—as in the instant case, a discriminatory refusal to hire.

*Franks,* 424 U.S. at 761–2, 96 S.Ct. at 1263. Therefore, this Court is free to grant relief, in the form of retroactive seniority, to those applicants who were discriminatorily refused employment after the effective date of the Civil Rights Act of 1964. This Court is not holding that the seniority system of the collective bargaining agreement is illegal. We hold that retroactive seniority is an appropriate form of relief for affected class members victimized by post-Act discriminatory hiring practices of the Company.

In light of the above, the Court will grant in part Local 84's motion to amend the Amended and Final Decree of January 31, 1974, as amended by this Court's order of November 4, 1977. Section D of paragraph III, of the Decree deals with members of Affected Classes II, III and IV. Each of those classes is composed of job applicants who were discriminatorily denied employment after the effective date of the Civil Rights Act of 1964. As the law now stands, section D is a valid exercise of this Court's injunctive power and the relief granted therein shall continue. Sections F and G of paragraph III, as explanatory sections shall also remain in effect. However, sections A, B, C and E of paragraph III of the Decree will be vacated' and the injunctive relief declared therein is rescinded. The seniority system collectively bargained for by Local 84 and the Company may now be used to determine seniority for competitive bidding except as that system is modified by the remaining sections of paragraph III. Local 84 will not be dismissed as a party to this action, as requested, because of their integral involvement in all continuing aspects of this action.

2. Also pending before the Court is a motion to intervene by Bennie A. Rhodes and Willie E. Prather. The intervenors contend that they are black employees of the defendant who have been discriminated against in their employment in violation of the Decree. They seek injunctive relief, back pay and "front" pay for themselves and other persons similarly situated. The intervenors are also the plaintiffs in *Rhodes, et al. v. Georgia Power Company, et al.,* Civil Action No. 78–2028A (N.D. Ga.), which was filed against the present defendants on November 24, 1978. In both their complaint and the motion for intervention, Prather and Rhodes allege violations of the Decree and seek enforcement of the Decree by the Court.

Paragraph IX of the Decree sets out the complaint procedure an employee questioning the interpretation or implementation of the Decree must follow to receive consideration of his objection. In the event that the matter cannot be resolved through the complaint procedure, counsel for the Government, Company or the private plaintiffs may "bring the matter" before the Court. The lack of a more detailed procedure for seeking judicial review has led to understandable confusion on the part of the intervenors. To resolve this matter, as well as future complaints, this Court will now set out, in detail, the procedures to be followed should an affected class member feel that the Decree has been violated.

In order to bring a grievance to the attention of the Court, the complaining employee should file a motion in the present action, that is Civil Action No. 12355. Filing a separate complaint will likely result in a dismissal as occurred today in *Rhodes, et al. v. Georgia Power Company, et al., supra.* These instructions apply only to grievances arising out of the Decree entered in this action. The complainant's motion must be served on the Government, the Company and the Union involved or their counsel. The motion must be filed with an explanatory brief.

Before filing a motion, the complainant must completely exhaust the grievance procedure set out in Paragraph IX of the Decree. The motion must indicate that the grievance procedure has been exhausted

and include supporting documents. Counsel for the Government or the grievant and the Company must be allowed a fair opportunity to resolve the dispute without judicial intervention, as provided for in the Decree. This Court will not serve as an alternative to the grievance procedures set out in the Decree. Therefore exhaustion of those procedures is a prerequisite to any consideration of the motion by the Court.

The complaining party must indicate that he or she is a member of the affected class and show to which class they belong. The motion should describe the grievance with particularity and set out the responses or actions taken as a result of the complaint procedures. The relief requested by the movant should also be specified. If the Company, Government, or Union wishes to respond to the motion, such response should be filed within fifteen (15) days of the date of filing of the motion.

In order that affected employees may be informed of these procedures, the Manager of the Employee Relations Department of the Company shall so inform the complaining party, at the same time he responds to the complaint as required by the Decree. Paragraph IX of the Decree is hereby amended to include the above described complaint procedures.

If the intervenors wish to complain to the Court, they must follow the above described procedures. The motion to intervene is denied.

3. The last motion pending before the Court is by Doris Baker, a member of the affected class of rejected applicants. The movant seeks an extension of the period of this Court's jurisdiction and an order requiring the Company to show cause for its failure to comply with the Decree as to her.

There is no need for Ms. Baker's motion for extension of jurisdiction for that has already been done in the Court's order of July 7, 1978. As to her request for a show cause order, the movant is instructed to comply with the terms of the procedures set out above. Although her motion is in partial compliance, she has not shown exhaustion of remedies, nor set out her grievance with particularity. For the present her motion will be denied, subject to future consideration upon her compliance with this order.

Accordingly, the motion for modification of the Amended and Final Decree of January 31, 1974, by defendant Local No. 84 is GRANTED, in part. The motion to dismiss Local No. 84 is DENIED. The motion to intervene is DENIED. The motion of Doris Baker is DENIED, subject to reconsideration. Section IX of the Decree is AMENDED as set forth above. The Clerk is instructed to note the complaint procedures set forth above.